**David G. Banes, F0171**
**O'CONNOR BERMAN DOTTS & BANES**
**2nd Floor, Marianas Business Plaza**
**P.O. Box 501969**
**Saipan, MP 96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

*Attorneys for Plaintiff Matthew J. Yaquinto*

FILED
Clerk
District Court

DEC 2 9 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

CV 17-00023

| | |
|---|---|
| **MATTHEW J. YAQUINTO,** | ) CIVIL CASE NO. ___-_____ |
| **Plaintiff,** | ) |
| vs. | ) |
| **COMMONWEALTH UTILITIES** | ) |
| **CORPORATION and DOES 1-5,** | ) **COMPLAINT AND JURY TRIAL** |
| **Defendants.** | ) **DEMAND** |
| | ) |

Plaintiff Matthew J. Yaquinto ("Mr. Yaquinto") hereby complains against the Defendant

Commonwealth Utilities Corporation ("CUC") as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction of this matter pursuant to the Covenant to Establish a

Commonwealth of the Northern Mariana Islands In Political Union With the United States of

America (authorizing Congress to establish this Court), 48 U.S.C. § 1821-22 (establishing this

Court and granting it the jurisdiction of a district court of the United States), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (jurisdiction over civil rights actions), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. §2000 e-(f)(3).

2.     Mr. Yaquinto has satisfied all procedural conditions prior to instituting this lawsuit.

3.     Plaintiff timely filed a discrimination charge against Defendants with the Equal Employment Opportunity Commission (EEOC), and received notice of his right to sue from the EEOC within ninety days of the filing of this Complaint.

**PARTIES**

4.     Mr. Yaquinto is a citizen of the United States presently residing in Houston, Texas.  At all times pertinent to this Complaint, he was employed at Commonwealth Utilities Corporation ("CUC" or "Defendant"), Saipan, CNMI. He is a certified public accountant with over 25 years of experience as a senior financial executive. Before working for CUC, Mr. Yaquinto provided financial, technical and commercial advice to multiple companies throughout the world, many of which were utility companies.

5.     CUC is a government instrumentality of the CNMI within the CNMI Government headed by an executive Director. At all times pertinent to this Complaint, CUC was an employer of Plaintiff within the meaning of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §2000e(b)(g) and (h).

6.     Plaintiff at this time, does not know the  true names and capacities of Does 1-5. Therefore, Mr. Yaquinto is suing the Doe defendants using fictitious names. Plaintiff reserves the right to amend the complaint to name one or more Doe defendants at the time Plaintiff learns their true identities.

7.     On information and belief, all of the acts and omissions alleged in this complaint were undertaken by and are attributable to CUC and the Doe defendants, each acting as successor, agent, employee, or under the direction and control of CUC. Plaintiff further alleges that all alleged acts and failures to act were within the scope of each agency and employment relationship and that each of CUC and the Doe defendants participated in, approved, or ratified each of the unlawful acts or omissions alleged in this complaint. Whenever this complaint refers to an act or omission undertaken by CUC, unless specified otherwise, the act or omission will be deemed to be the act or omission of CUC and each of the Doe defendants, acting individually, jointly, and severally.

**FACTS**

8.     On or about November 19, 2008, Defendant CUC entered into  two Stipulated Orders for Preliminary Injunctive Relief ("Stipulated Orders") in *United States v. Commonwealth Utilities Corporation and the Commonwealth of the Northern Mariana Islands*, Civil Action No. 08– 0051.  CUC was sued by the United States for violating certain conditions of Clean Water Act ("CWA"), 33 U.S.C. 1251–1387, as amended by the Oil Pollution Act, 33 U.S.C. 2701–2762; and the Safe Drinking Water Act ("SDWA"), 42 U.S.C. 300f–300j–26.

9.     The Stipulated Orders were intended  among other things to ensure that CUC's power plant facilities achieve compliance with the CWA and that CUC had to  hire certain people with approved of qualifications.  Certain acting officials were exempt from the District Court's oversight and did not necessarily have to comply with the Stipulated Orders meaing persons without the necessary qualifications could be hired as long as they were termed to be only "acting" or "temporary" directors for example.

10.     Mr. Yaquinto was hired as CUC's Chief Financial Officer ("CFO") on or about April 15, 2015 as he met the required conditions of the Stipulated Orders.   As CFO, his duties

3

included comprehensive management and leadership for CUC, including leading the finance, procurement and information technology departments, policy developments and interpretation, administration programs, process, functions, and hiring staff. Mr. Yaquinto reported directly to CUC's Board of Directors.

11.     CUC hired and promoted Gary Camacho ("Mr. Camacho")  as the acting Executive Director of CUC in order to be able to circumvent the requirements of the Stipulated Orders and oversight of the United States District Court.  Mr. Camacho was not qualified to be CUC's Executive Director.   But, as defined herein,  he is of Northern Marianas descent.

12.     On or about May 24, 2016, in his capacity as CFO of CUC released a report that CUC was suffering significant financial troubles which the CNMI media interpreted and printed as saying CUC was essentially bankrupt.

13.     The very next day, May 25, 2016, without review or explanation, Mr Camacho, acting at the direction of CUC, terminated Mr. Yaquinto's contract "without  cause".  However, Mr. Camacho did not have the appropriate authority to do so as Mr. Yaquinto's contract stated he reported directly to the Board of Directors. Also Mr. Camacho was hired and retained illegally as he did not meet the statutory requirements of 4 CMC 8133(a) in order to be an Executive Director.

14.     It is stated in his contract that he can be terminated for "without cause", but Mr. Yaquinto had never been given a review or any written derogatory information as to his performance as CUC's CFO or otherwise informed by Mr. Camacho, former Executive Directors,  or the Board of Directors that  that his work was anything other than excellent. Instead that the real reason CUC terminated him was due to his national origin (European),  his color (white) and his race (Caucasian).

15.     Mr. Yaquinto is not from Saipan, where the local residents are of Chamorro or Carolinian decent (colloquially known as "NMI Descent"), and a different color and race than him. He was pressured by members of the Board to hire only persons of NMI descent and when Plaintiff made decisions based on merits, not race, the Board members started to accuse Mr. Yaquinto of being discriminatory against "locals", i.e., persons of Northern Marianas descent.

16.     Later his suspicions were confirmed when CUC (October 2016) hired a new Chief Financial Officer, who is from Saipan and does not have the qualifications to be a CFO of CUC, but who is of NMI Descent. In fact, he does not meet the minimum requirements of being the CFO at CUC or any other utility company similarly situated as CUC especially an electric, water and waste-water utility. Additionally, other prominent officials of CUC, who were also white and Caucasian, and had hard-to-fill federally funded jobs with CUC were either forced to resign or were terminated.

17.     Immediately after being fired, Mr. Yaquinto attempted to file a grievance with CUC but the Board of Directors refused to hear his grievance.

18.     During Plaintiff's employment from the day he started to the day he was terminated, Mr. Yaquinto was constantly harassed by the Board of the Directors and later by Mr. Camacho. This created a hostile work environment that made working at CUC very difficult. The offensive conduct was continuous during his employment and created a hostile work environment.

19.     During almost every Board meeting or Board committee meeting that he attended during his employment, the majority of Board members would accuse Plaintiff of various things that were not true (i.e. discriminating against locals by making hiring decisions based only on merit, having an "agenda" other than the Board's such as disclosing CUC's real economic

situation, not providing information timely).  Mr. Yaquinto was constantly chastised and yelled at (or spoken to rudely) at open and closed (or Executive Session) Board meetings.

20.     This harassment also included actions of the Acting Executive Director, Gary Camacho.  He became the Acting Executive Director in December 2015 and until the day Mr. Yaquinto was terminated (June 25, 2016), he constantly harassed him about the similar items as the Board did and described above on information and belief based on directions by the Board and so as to keep his job.

21.     These actions by CUC's Directors and Mr. Camacho were motivated by a bias due to his national origin, race and color - - because he was not of NMI Descent. Those of the NMI Descent and race were not treated this way. On information and belief, the Board's actions were intended to make Mr. Yaquinto resign so he could be replaced with a person of NMI descent or race,  - - as occurred with other white, Caucasians of European descent who held high positions at CUC.

22.     Because of this bias against white, European, Caucasians, Plaintiff Matthew Yaquinto was subjected to retaliation by Defendant CUC, including but not limited to further harassment on the job, onerous and/or demeaning work assignments, and finally the termination of his employment contract.

23.     Defendant CUC knew or should have known of the actions of  the actions of its Directors, and Mr. Camacho and John Doe Defendants' actions, but failed to take remedial action.

24.     The actions of Defendant set forth in this Complaint were taken intentionally, and with malice or reckless indifference to the protected rights of Plaintiff within the meaning of 42 U.S.C. § 2000e-5(g)(1)  and § 1981a(b)(1).

25.     All of CUC's employees, supervisors, officers and directors and managers actions and inaction towards Mr. Yaquinto were unlawful discriminatory conduct attributable to CUC.

### First Cause Of Action-Unlawful Employment Practices

26.     Paragraphs 1-25 of the Complaint are realleged and incorporated here by reference.

27.     Title 42, Section 2000e-2(a) of the United States Code makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

> (2) or to limit, segregate, or class(2) or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

28.     Pursuant to 42 U.S.C. § 2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates, among other things, that race, color, religion, sex and/or national origin was a motivating factor for any employment practice, even though other factors may have also motivated the practice.

29.     Mr. Yaquinto was, at all times relevant to his claims herein, qualified for the position he held with CUC and/or for another position with CUC.

30.     At all times relevant to his claims herein, Mr. Yaquinto adequately performed his job with CUC.

31.     The majority of CUC's board member and Mr. Camacho acting at the direction and behest of these Board memebers, created a hostile work environment for Mr. Yaquinto by shouting at him, making racially charged comments to him, on information and belief by making

comments to other employees and/or officers and directors about him, and by doing other things which, on information and belief, Mr. Camacho and the Board undertook because Mr. Yaquinto was a Caucasian, was white and of European descent.

32.    On May 25, 2016 Plaintiff's employment with CUC was terminated because of CUC's discriminatory acts based on race, color and national origin

33.    By reasons of the foregoing acts, Defendant has discriminated against Plaintiff with respect to his compensation, terms, conditions and privileges of employment and ultimately in his termination of employment because of his race, color and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

34.    By reason of Defendant's unlawful employment practices, Mr. Yaquinto is entitled to remedies as set forth in 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a including compensatory and punitive damages for CUC's unlawful, discriminatory conduct in an amount to be determined by a jury after a trial on the merits.

35.    Pursuant to 42 U.S.C. § 2000e-5(k), Mr. Yaquinto is also entitled to his costs, including expert costs and reasonable attorney's fees.

**Second Cause of Action – Violation of Civil Rights (CNMI Constitution)**

36.    Paragraphs 1-35 of the Complaint are realleged and incorporated here by reference.

37.    As a result of Defendant CUC's actions as set forth herein, Mr. Yaquinto has been deprived of liberty and property without due process of law in violation of Article 1 Section 5 of the CNMI Constitution; has been denied the equal protection of the laws in violation of Article 1 Section 6 of the CNMI Constitution; has been denied the enjoyment of

civil rights and been discriminated against in the exercise thereof on account of race, national origin and color in further violation of Article 1 Section 6 of the CNMI Constitution; and his right of individual privacy has been infringed in violation of Article 1 Section 10 of the CNMI Constitution.

### Third Cause Of Action Discrimination Based Upon Race, Color And National Origin

38.     Paragraphs 1-37 of the Complaint are realleged and incorporated here by reference. Plaintiff re-alleges and incorporates paragraphs 1-36.

39.     The majority of CUC's board members and Mr. Camacho acting as the Board's agent created a hostile work environment for Mr. Yaquinto by shouting at him, making racially charged comments to him, by making comments to other employees, officers and directors about him, and by doing other things which, on information and belief, Mr. Camacho and the Board undertook because Mr. Yaquinto was a Caucasian, white and of European descent.

40.     The unlawful discrimination committed by CUC was intentional.

41.     The unlawful discrimination committed by CUC was done with malice and with reckless indifference for Mr. Yaquinto's federally protected rights.

42.     As a result of CUC and Mr. Camacho's actions, Mr. Yaquinto suffered irreparable injuries, including but not limited to emotion distress, loss of pay, loss of benefits, and other damages for which CUC should compensate Mr. Yaquinto.

**Fourth Cause of Action-Breach Of Contract**

43.     Paragraphs 1-42 of the Complaint are realleged and incorporated here by reference. Plaintiff re-alleges and incorporates paragraphs 1-41 above.

43.     When Mr. Camacho terminated Plaintiff, he did not have the authority or power to do so as Mr. Yaquinto's contract stipulated that his contract could only be terminated by CUC's board of directors.

44.     Additionally, Mr. Yaquinto's contract was terminated because of his race, color and national origin.

45.     Therefore, when CUC acting through Mr. Camacho terminated Plaintiff he intentionally breached Mr. Yaquinto's contract entitling him to damages, prejudgment interest, loss of benefits and compensatory damages.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 58(b) and 42 U.S.C. § 1981a(c), Mr. Yaquinto demands a jury trial on all issues triable before a jury.

## PRAYER

WHEREFORE, Plaintiff prays the Court grant him the following relief:

1.   General and incidental and consequential damages in an amount to be proven at trial.

2.   An order requiring such affirmative action by Defendant as may be appropriate, including back pay, or any other equitable relief as the court deems appropriate.

3.   Compensatory and punitive damages, including but not limited to damages for wages lost, loss of reputation, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

4.   Interest.

5.   An award of costs (including the costs of experts) and reasonable attorneys' fees; and

6.   Such other and further relief as the Court deems just and proper.

## VERIFICATION OF COMPLAINT

I, MATTHEW J. YAQUINTO hereby certify that I have read and understood the allegations and claims made herein and that I consent to be a party plaintiff herein.  I further certify that the factual statements made herein are true and correct to the best of my knowledge and belief and that I verified the accuracy of the above Complaint this 29TH day of December 2017.

MATTHEW J. YAQUINTO
Plaintiff

Respectfully submitted this 29th day of December 2017.

O'CONNOR BERMAN DOTTS & BANES
*Attorneys for Plaintiff Matthew J. Yaquinto*

By:_____
    David G. Banes, Esq., F0171

M:\David Banes\Civil Cases\4182-01 Matt Yaquinto v. CUC\Drafts\4182-01-171228-P-Complaint- -final.doc